DECISION AND JOURNAL ENTRY
{¶ 1} Herman Tarazon appeals from the Akron Municipal Court, which convicted him of menacing and sentenced him accordingly. We affirm.
 I. {¶ 2} Mr. Tarazon's children were shooting BB guns in his yard. Meanwhile, Linda Miller's daughters were riding bicycles nearby. As seems inevitable, a BB struck one of the girls in the leg, causing the child a minor injury and infuriating Mrs. Miller. Mrs. Miller confronted Mr. Tarazon at his home. He denied the event, denied that his children had guns, and attempted to leave. When Mrs. Miller informed him she had called the police, Mr. Tarazon became irate, verbally abusive, profane and threatening. After this encounter with Mrs. Miller and her children, Mr. Tarazon drove away and was not at home when the police arrived. The police spoke with Mrs. Miller and later arrested Mr. Tarazon.
 {¶ 3} The City of Akron charged Mr. Tarazon with menacing in violation of Akron Codified Ordinance 135.06. Mr. Tarazon pled not guilty and the case proceeded to a bench trial. The court convicted Mr. Tarazon and sentenced him accordingly. Mr. Tarazon timely appealed, asserting two assignments of error. We have consolidated these two assignments of error to facilitate review.
 II. First Assignment of Error
"The trial court erred by failing to grant appellant's motion under criminal rule 29."
 Second Assignment of Error
"The decision of the trial court finding the appellant guilty was against the manifest weight of the evidence."
 {¶ 4} Mr. Tarazon asserts that his conviction is insupportable because the City failed to prove the necessary elements of an explicit threat and reasonable apprehension ofserious physical harm. According to Mr. Tarazon, he made no threat to the victims, the victims' fear of physical harm was unreasonable, and one of the victims was actually the initial aggressor. From all of this, Mr. Tarazon insists that his conviction must be reversed. We disagree.
 {¶ 5} Sufficiency and weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380,386. The test for sufficiency is whether the prosecution met its burden of production; manifest weight tests whether the prosecution met its burden of persuasion. Id. at 386-88. But, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. See id. at 388. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
 {¶ 6} Reversal on manifest weight grounds is reserved for the exceptional case when the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."State v. Otten (1986), 33 Ohio App.3d 339, 340. AccordThompkins, 78 Ohio St.3d at 387. A conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable theory of innocence. See State v.Jenks (1991), 61 Ohio St.3d 259, 272. Similarly, on conflicting testimony, "a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *5.
 {¶ 7} Under Akron Codified Ordinance 135.06(A), menacing is enforced as: "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person or member of his immediate family." Despite Mr. Tarazon's assertions, a plain reading of this ordinance makes evident that it does not require an explicit
threat, nor does it require a reasonable apprehension ofserious physical harm. Mr. Tarazon has not provided this Court with authority to persuade us to so extend the ordinance.
 {¶ 8} The City asserted that Mr. Tarazon's statements and threatening conduct menaced Mrs. Miller and her children, who feared for their personal safety, the safety of their family, and their home. The City produced testimony from the responding officer, Mrs. Miller and her two children. Mr. Tarazon testified in his own defense. Upon acknowledging that such testimony will inevitably produce some inconsistent or conflicting assertions, we recognize the sound principal that the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence. SeeState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 9} Officer Matson testified that he had been called to the scene by Mrs. Miller, and upon arrival found her and her children crying and apparently traumatized by the encounter. Mr. Tarazon was not at home, so Officer Matson returned later that evening to question him, whereupon Mr. Tarazon lied to him — denied the event had occurred, denied that he had made any statements to Mrs. Miller, and denied that his children even had BB guns. The children's mother confirmed that they did in fact have BB guns and provided one, which Officer Matson confiscated.
 {¶ 10} Mrs. Miller testified that Mr. Tarazon was defiant, irrational, aggressive and threatening. She testified that she was afraid for herself and her children — particularly when he warned that he would find out where they lived. According to Mrs. Miller, after this ominous threat, Mr. Tarazon spewed a profane tirade at her and then drove off before the police could arrive. Finally, Mrs. Miller testified that her children were sobbing and were terrified of Mr. Tarazon. Both children also testified that they were afraid — particularly when he warned that he would find out where they lived.
 {¶ 11} Mr. Tarazon testified that he was inside his home, peacefully minding his own business, while his children were outside playing with guns. Suddenly, he heard someone outside his home yelling at these children. Mr. Tarazon went outside to pacify the situation, but Mr. Miller began yelling at him and Mrs. Miller joined him. Mr. Tarazon admitted that he immediately lied to the Millers by claiming that there were no guns even though he knew the children had guns, but later claimed again that there were no guns. This is typical of Mr. Tarazon's testimony: at points admitting he was angry, at other points denying it; at points admitting he was yelling, at other points denying it.
 {¶ 12} Even on direct examination, Mr. Tarazon admitted that he began yelling at the Millers and he did not deny his profanity. Rather, he explained that when Mrs. Miller criticized him for yelling profanity he felt compelled to state his First Amendment rights. He also explained that Mrs. Miller suggested that he may not be an American citizen, "And, [having been] in the [U.S. Army], I know when I'm being discriminated." Therefore, even though he admitted his son was at fault for the BB gun shooting, this discrimination so angered him that it was better for him to leave than to try to resolve the matter at that time. Thus, he contends that his statement — that he would find out where the Millers lived — meant that he would peacefully resolve the matter with them later, that is "see what [Mrs. Miller's daughter] needed, medical attention, I could pay for it," that sort of thing.
 {¶ 13} Finally, Mr. Tarazon explained that, when he discovered the police had been called, he hastily fled with the children and the guns because, "I wasn't going to allow a hostile situation to get worse." But the statement from him — that he would find out where they lived — is a very odd choice of words. It is also odd that he could be so gracious in the face of his perceived discrimination; that he could not begin to resolve it at that time; that he was so fearful of the police arriving; or that he would not have asked the Millers for a phone number or offered his own.
 {¶ 14} Based on our review, we conclude that Mr. Tarazon's criticisms of the State's evidence in this case are insufficient to find that the trier of fact lost its way and created a manifest miscarriage of justice. See Otten,33 Ohio App.3d at 340; Thompkins, 78 Ohio St.3d at 387. Rather, we find it reasonable that the court believed the State's version of the events, disbelieved Mr. Tarazon and convicted Mr. Tarazon accordingly. We conclude that the conviction is not against the manifest weight of the evidence. Accordingly, the evidence meets the requirements for sufficiency. The assignments of error are overruled.
 III. {¶ 15} Mr. Tarazon's assignments of error are overruled. The decision of the Akron Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Municipal Court of Akron, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Moore, J., concur.